UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JOHNNY BURGESS,

        Plaintiff,

v.                                    Case No. 5:17-cv-131-Oc-39PRL

FNU ROUSE, and JONATHAN JORGE,

        Defendants.

_____

**ORDER**

**I. Status**

Plaintiff Johnny Burgess initiated this action on March 29, 2017, by filing a pro se Civil Rights Complaint (Doc. 1; Complaint). After the Court dismissed the claims against the Secretary of the Florida Department of Corrections (FDOC) and the prison warden, see Order (Doc. 13), two Defendants remain: Jonathan Jorge and FNU Rouse, corrections officers at Lake Correctional Institution (LCI). In his Complaint, Plaintiff asserts Defendants failed to protect him from an inmate attack in violation of the Eighth Amendment. See Complaint at 5. As relief, Plaintiff seeks compensatory and punitive damages. Id. at 7-8.

Before the Court is Defendants' Motion for Summary Judgment (Doc. 102; Motion). In support of their Motion, Defendants provide Plaintiff's FDOC face sheet (Doc. 118-1); a provision of the Florida Administrative Code (Doc. 118-2); an FDOC incident report

dated July 23, 2015 (Doc. 118-3; Incident Report); an investigative report by the Inspector General's Office (Doc. 118-4; IG Report); Defendant Jorge's affidavit (Doc. 118-5; Jorge Aff.); Defendant Jorge's responses to Plaintiff's interrogatories (Doc. 118-6; Jorge Interr. Resp.); the transcript of the inspector's interview with Defendant Jorge (Doc. 118-7; Jorge Interview Tr.); the affidavit of Defendant Rouse (Doc. 118-8; Rouse Aff.); Defendant Rouse's responses to Plaintiff's interrogatories (Doc. 118-9; Rouse Interr. Resp.); the transcript of the inspector's interview with Plaintiff (Doc. 118-10; Pl. Interview Tr.); a MINS report dated July 20, 2015 (Doc. 118-11); copies of Plaintiff's grievances and responses (Doc. 118-12); excerpts of Plaintiff's deposition transcript (Doc. 118-13; Depo. Tr.); an FDOC disciplinary report against Plaintiff dated July 23, 2015 (Doc. 118-14); and Plaintiff's medical records (Doc. 118-15; Med. Records).

Plaintiff responded to the Motion (Doc. 108; Response), with exhibits, most of which are duplicative of evidence Defendants offer, including his deposition transcript, Defendants' responses to his interrogatories, and his medical records. See Response at 12-13 (Plaintiff's index of exhibits).[1] Plaintiff also offers his own affidavits, the affidavits of two other inmates, multiple sick-

_____

[1] Plaintiff's exhibits are appended to his Response (Doc. 108). As with all documents referenced in this Order, the Court will cite the exhibits according to the page number assigned by the Court's electronic case management system.

call request forms he submitted following the incident, and provisions of the Florida Administrative Code. Id.

With leave of Court, see Order (Doc. 112), Defendants replied (Doc. 119; Reply). Accordingly, the Motion is ripe for this Court's review.

## II. Summary Judgment Standard

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The record to be considered on a motion for summary

judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted).

Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### III. Plaintiff's Allegations[2]

In his Complaint, Plaintiff alleges Defendant Jorge orchestrated a plan to have another inmate attempt to kill him. See Complaint at 6. The incident occurred on July 23, 2015, in the mental health unit at LCI. Id. at 5. While Plaintiff was attending a mental health "group" session, another inmate, Martavius Henderson, stabbed Plaintiff with a shank/knife ("weapon") ("the stabbing incident"). Id. at 5, 6. Plaintiff states he told both Defendants that Henderson had a weapon and would kill Plaintiff if the two inmates were "allowed in the group room" together Id. at 5.

In his first of two affidavits, Plaintiff avers he had been in fear of Henderson since Henderson attacked him the week before the stabbing incident ("the first incident"). See Response at 15. On the morning of the stabbing incident, inmate Henderson, from his cell, showed Plaintiff he had a weapon, and Henderson threatened to kill Plaintiff with it. Id. At that time, Defendant Jorge and the mental health official were on the wing to determine

---

[2] Because this case is before the Court on Defendants' Motion for Summary Judgment, the Court must credit Plaintiff's version of events. Plaintiff's allegations are drawn from his verified Complaint and the evidence he offers in Response to the Motion. The factual assertions in Plaintiff's Complaint, which is verified under penalty of perjury, satisfy "Rule 56's requirements for affidavits and sworn declarations," and are therefore given the same weight as factual statements made in an affidavit. See Stallworth v. Tyson, 578 F. App'x 948, 950 (11th Cir. 2014).

which inmates wanted to participate in group. Plaintiff claims he got Defendant Jorge's attention and "informed him that inmate Henderson had a [weapon] that he'd try to kill [Plaintiff] with" if the two were placed together in group. Id. at 15-16. Plaintiff tried to discreetly inform Defendant Jorge of his fear because Henderson's cell was nearby: Plaintiff says he whispered the warning to Defendant Jorge and held up a piece of paper that said, "HE'S GOT A KNIFE!" Id. at 15, 16. Plaintiff avers Defendant Jorge ignored his worries because Plaintiff and Jorge had prior "problems and disputes," and Plaintiff had recently filed a grievance against Jorge, which was reported to the Inspector General's Office for investigation. Id. at 16.

Plaintiff was brought to the group room before Henderson. Id. Plaintiff informed Defendant Rouse, who was in the group room with him, that Henderson had a weapon and would try to kill Plaintiff with it. Plaintiff avers Defendant Rouse laughed his warning off as a joke.[3] Defendant Rouse also stated to Plaintiff, "no ones

---

[3] In his Complaint, Plaintiff asserts Defendants either planned the attack or permitted it to occur in retaliation for Plaintiff getting feces on them during cell extractions. Complaint at 6. Defendants deny these allegations. Defendant Jorge states he wore cell extraction suits when dealing with Plaintiff, see Jorge Interr. Resp. ¶ 22, and Defendant Rouse denied having been involved in any cell extractions with Plaintiff, see Rouse Interr. Resp. ¶¶ 21, 22. Plaintiff does not assert a First Amendment retaliation claim against Defendants. His only claim is a failure-to-protect under the Eighth Amendment. As such, the Court limits its factual summary to legally relevant facts.

[sic] got a knife. And we wont [sic] let no one kill you." Id. According to Plaintiff, Defendant Jorge extracted Henderson from his cell. Id. From the group room, Plaintiff observed Defendant Jorge talking to Henderson and noticed that Jorge failed to search Henderson before escorting him to the group room. Id.

Plaintiff describes the following occurred as Henderson entered the group room: "By the time inmate Henderson walked through the threshold of the group room door, he was pulling his hand back up out of his pants with the [weapon] in his hand." Id. Upon seeing the weapon, Plaintiff shouted, "he's got a knife," and he rushed towards Henderson to protect himself from being stabbed. Id. at 16-17. Defendant Jorge grabbed Plaintiff, affording Henderson an opportunity to stab Plaintiff. Id. at 17.

Plaintiff offers the affidavits of two inmates, Morilus Ronald and Lane Trimanye, who were housed on the mental health wing with him and Henderson. Inmate Ronald avers he witnessed Plaintiff "tell [Defendant] Jorge that Henderson had a [weapon]," but Defendant Jorge ignored Plaintiff. Id. at 21. Ronald further states Plaintiff tried to inform Defendant Rouse about the threat, but Defendant Rouse also ignored him. Id. Ronald explains what happened when Defendant Jorge escorted Henderson into the group room: "[Defendant] Jorge let Henderson rushing [sic] [Plaintiff] and stabbed [Plaintiff]." Id.

Inmate Trimanye avers he was housed on the mental health wing with Plaintiff and Henderson on the day of the first incident. Id. at 23, 24. Trimanye avers Defendant Rouse "served and investigated" a disciplinary report against Henderson following the first incident. Id. at 23. Trimanye characterizes the first incident as "the talk of the mental health unit." Id. After the first incident, Trimanye was moved to another wing of the prison. Id. at 24. However, he says he later "heard of staff allowing Henderson into the [mental health] group with a weapon," which resulted in Plaintiff's stabbing. According to Trimanye, the mental health official overheard Plaintiff warn Defendant Rouse of Henderson's threat and possession of a weapon. Id. The mental health official told Trimanye he did not report what he overheard because he was scared to lose his job. Id.

Trimanye, in a second affidavit, explains he was later transferred to two different correctional institutions along with Henderson. Id. at 27. He avers the following:

> Henderson bragged . . . about how he had almost killed [Plaintiff] and gotten away with it … because officers did not like [Plaintiff] so they covered up the evidence… [P]lus Henderson bragged about how [Plaintiff] had snitched and forewarned officers Jorge and Rouse that he had a knife but they wouldn't listen to him …. Henderson stated that he consulted with officer Jorge to leave his handcuffs on 1 click so that he could easily slide his hands out of the handcuffs and jump on [Plaintiff] and officer Jorge agreed.

Id. at 27-28. Henderson also stated, however, Defendant Jorge did not know Henderson had a weapon; Defendant Jorge "only wanted Henderson to jump on [Plaintiff,] not stab him." Id. at 28.

### IV. Summary of the Arguments

In their Motion, Defendants argue there is no evidence demonstrating they were deliberately indifferent to a serious risk of harm, they are entitled to qualified immunity, and Plaintiff cannot recover compensatory or punitive damages under 42 U.S.C. § 1997e(e). See Motion at 13, 16, 17. Additionally, Defendants assert Eleventh Amendment protects them from damages in their official capacities. Id. at 15.

Defendants argue there is no evidence they knew of the first incident between inmate Henderson, and Plaintiff initiated the stabbing incident, thus causing his own injury. Id. at 13. Defendants state, "[t]here is no evidence to support Plaintiff's assertion that [they] knew ahead of time that Inmate Henderson intended to attack Plaintiff." Id. In their Reply, Defendants contend Plaintiff "can show no evidence" they knew Henderson posed a threat of harm to Plaintiff. Reply at 3. They reason, "Defendants did not place Plaintiff in any vulnerable position or at risk because Plaintiff himself initiated the attack." Id.

Defendants rely in part upon internal FDOC records and their own statements. In the incident report, the reporting employee recorded, "[Defendant] Jorge informed me during this group session

9

[Plaintiff] . . . stood up out of his chair and charged at Inmate Henderson . . . . [who] stabbed [Plaintiff] in the neck with a homemade knife." Incident Report at 1. Defendants aver in their affidavits that they saw Plaintiff rush at Henderson. Defendant Jorge states, Plaintiff "aburuptly jumped out of his chair and charged Henderson." Jorge Aff. at 4. According to Defendant Rouse, "[P]laintiff stood up and charged at Inmate Henderson and attempted to fight him." Rouse Aff. at 3.

Defendants also rely upon Plaintiff's deposition testimony and his statements to the inspector who investigated the incident on behalf of the Inspector General's Office. In his deposition, Plaintiff testified he "rushed" at Henderson when Henderson walked into the group room. Depo. Tr. at 6. Plaintiff told the inspector he knew Henderson had a weapon but "still had an altercation with him." Pl. Interview Tr. at 5. Additionally, Plaintiff informed the inspector he (Plaintiff) told Henderson to bring the weapon with him to group because Plaintiff wanted the officers to catch Henderson with it. Id. at 6. The inspector referred the matter to the State Attorney's Office. IG Report at 12. The State Attorney's Office declined to prosecute Henderson, stating "the victim [Plaintiff] was the individual who instigated the fight in a rather calculated way to get the suspect [Henderson] in trouble." Id. at 14.

Defendants explain in their affidavits the process for moving inmates from their cells to the group room. On the day in question, Rouse strip-searched Plaintiff and escorted him to the group room. See Rouse Aff. at 2. Defendant Jorge avers he strip-searched Henderson and brought him to the group room after Plaintiff was already there. See Jorge Aff. at 3-4. See also Jorge Interr. Resp. ¶ 24 (stating Defendant Jorge searched Inmate Henderson "prior to pulling him out for group"). Defendants deny any recollection or knowledge of the first incident between Plaintiff and Henderson. See Jorge Aff. at 1-2; Rouse Aff. at 3; Jorge Interr. Resp. ¶ 10; Rouse Interr. Resp. ¶ 10. However, neither Defendant directly disputes Plaintiff informed them, prior to the stabbing incident, that Henderson had a weapon and planned to harm Plaintiff during group. See Jorge Aff. at 3-4; Rouse Aff. at 3.

In response to the Motion, Plaintiff asserts he did not instigate the stabbing incident. He acknowledges he told the inspector and testified during deposition that he rushed at Henderson. But he explains he did so to protect himself because he realized Defendants were not going to do so. See Pl. Interview Tr. at 5; Depo. Tr. at 6. During the interview with the inspector, Plaintiff admitted he had the altercation with Henderson knowing Henderson had a weapon, but he explained why:

> I told the [prison guards] – before I came out
> because I knew [Henderson] had [the weapon].
> I knew he was gonna brang [sic] it. So what I

11

did was I try to set him up. I told him make
sure he brang [sic] it at the group with him.
So when I came out, I told the police [prison
guards] so they can catch him with it. But .
. . Officer Jorge . . . me and him had a
problem . . . . I tried to tell him, I said,
"Man, dude got a knife, you know what I'm
saying, he gonna try to do something to me,"
but he – I don't know. He overlooked it.

Then I told the officer in the group home
. . . but he was saying something about don't
worry about it, he ain't gonna let nothing
happen. Ain't gonna be a fight. They gonna
break it up regardless, so.

Pl. Interview Tr. at 5-6.

In his deposition, Plaintiff testified he "rushed" at inmate
Henderson because he believed the guards were not going to protect
him even though he told them inmate Henderson was planning to bring
a weapon to group. See Depo. Tr. at 6, 8. He elaborated that he
told the guards Henderson had a weapon and that the two of them
had a prior altercation, but "[the guards] let [Henderson] out of
his cell with th[e] [weapon]." Id. at 9.

Plaintiff agreed he was "trying to set up Henderson," but he
disagreed with the characterization of him as the "instigator,"
saying he "was trying to get [the guards] to disarm [Henderson]."
Id. at 8. Plaintiff testified as follows:

I told the [guard] when [Henderson] showed
[the weapon] to me, I told him before they
pulled me in group. That's when I found out
that morning, so I was like, Man, he got the
shank, hoping they go search him and take the
shank from him, but they just – that's how I
thought it was going to turn out. . . . Usually

12

> . . . if an inmate say that, especially in
> that type of environment, because it's a
> mental health treatment facility, so it's kind
> of treated – it's like different from
> everywhere else, so like you tell the officer,
> Man, that inmate got a knife, they going to
> search him down or something, but they just
> ignored it . . . .

Id. Plaintiff explains he believed if he told the prison guards Henderson had a weapon, they would search Henderson and confiscate the weapon, thereby protecting Plaintiff from the planned attack. Id.

## Legal Analysis & Conclusions of Law

### A. Eleventh Amendment Immunity

Defendants assert they are entitled to Eleventh Amendment immunity as to any claims against them for damages in their official capacities. See Motion at 15. Plaintiff does not address this argument. See Response. When a plaintiff sues a state actor in his official capacity, "the action is in essence one for the recovery of money from the state." Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986). As such, "the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." Id. (finding the FDOC Secretary was immune from suit in his official capacity).

Defendants are entitled to Eleventh Amendment immunity as to any claim against them for monetary damages in their official

capacities. To that extent, Defendants' motion is due to be granted.

## B. Qualified Immunity

An officer sued in his individual capacity "is entitled to qualified immunity for his discretionary actions unless he violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Black v. Wigington, 811 F.3d 1259, 1266 (11th Cir. 2016) (quoting Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir. 2009)). Qualified immunity allows officers to exercise their official duties without fear of facing personal liability. Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018). The doctrine protects all but the plainly incompetent or those who knowingly violate an inmate's constitutional rights. Id.

Upon asserting a qualified immunity defense, a defendant bears the initial burden to demonstrate he was acting in his discretionary authority at the relevant times. Dukes v. Deaton, 852 F.3d 1035, 1041-42 (11th Cir.), cert. denied, 138 S. Ct. 72 (2017). For purposes of this motion, the Court accepts Defendants' assertions that they were acting within the scope of their discretionary duties at the time of the stabbing incident. See Motion at 16.[4] As such, the burden shifts to Plaintiff. To overcome

---

[4] Plaintiff's assertion that Defendant Jorge was complicit in a plan to harm Plaintiff suggests Jorge was not acting in the scope

14

a qualified-immunity defense, a plaintiff must demonstrate two elements: the defendant's conduct caused plaintiff to suffer a constitutional violation, and the constitutional violation was "clearly established" at the time of the alleged violation. Alcocer, 906 F.3d at 951. Plaintiff alleges Defendants were deliberately indifferent to a known risk of serious harm in violation of the Eighth Amendment. The Court will set forth relevant Eighth Amendment principles and then address whether Plaintiff's allegations overcome Defendants' qualified-immunity defense.

### i. Eighth Amendment Deliberate Indifference

Prison officials are not constitutionally liable for every inmate-on-inmate attack. Farmer v. Brennan, 511 U.S. 825, 832 (1994). However, the Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." Id. Although inmate-on-inmate attacks are not per se suggestive of a constitutional violation, inmates have a constitutional right to be protected from "physical assault[s] by other inmates." Zatler, 802 F.2d at 400. Prison officials may be liable under the Eighth Amendment if they are deliberately indifferent to a known, serious risk of harm to a specific inmate; mere negligence does not offend constitutional principles. Farmer, 511 U.S. at 828, 838.

---

of his discretionary duties; however, Plaintiff does not directly address this contention in his Response.

Thus, to establish an Eighth Amendment violation, an inmate must show a prison official "actually (subjectively) knows that an inmate is facing a substantial risk of serious harm, yet disregards that known risk by failing to respond to it in an (objectively) reasonable manner." Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 617 (11th Cir. 2007) (citing Farmer, 511 U.S. at 837, 844). A prison official subjectively knows of a risk of harm to an inmate when he "disregards an excessive risk to [the] inmate's health or safety." Farmer, 511 U.S. at 837. "The known risk of injury must be a 'strong likelihood, rather than a mere possibility' before a guard's failure to act can constitute deliberate indifference." Brown v. Hughes, 894 F. 2d 1533, 1537 (11th Cir. 1990). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from the circumstantial evidence." Rodriguez, 508 F.3d at 617 (emphasis in original) (quoting Farmer, 511 U.S. at 843).

> Furthermore, "an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Thus, a jury need not infer that the defendants intended that [the aggressor-inmate] harm [the plaintiff] or that they actually believed that [the aggressor-inmate] would harm [the plaintiff]. It is enough that a jury be able to infer from the evidence that the defendants actually knew of a substantial

16

> risk that [the aggressor-inmate] would
> seriously harm [the plaintiff].

Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1102 (11th Cir.
2014) (internal citations omitted) (emphasis in original).

Generally, where a plaintiff presents evidence that he
reported to the defendants only a vague, generalized fear of harm,
summary judgment may be appropriate. See, e.g., Carter v. Galloway,
352 F.3d 1346, 1349 (11th Cir. 2003). For example, in Carter, the
court held the plaintiff presented no evidence "of a particularized
threat or fear" because he did not tell the defendants he feared
his cellmate or his cellmate had directly threatened him, and he
did not request protection. Id. at 1348, 1350. The plaintiff only
demonstrated prison officials knew his cellmate was a "problem
inmate," had been roaming the cell like a "caged animal," intended
to fake a hanging, and told the plaintiff he (the plaintiff) would
help fake the hanging "one way or another." Id. at 1348. See also
Losey v. Thompson, 596 F. App'x 783, 789 (11th Cir. 2015) (holding
no Eighth Amendment violation because the plaintiff did not allege
a prior attack by the aggressor-inmate, and the plaintiff did not
state he notified any officer or the defendant that he was in
danger).

On the other hand, where a plaintiff presents evidence of a
particularized, well-founded fear, summary judgment is not
warranted. Rodriguez, 508 F.3d at 619; Caldwell, 748 F.3d at 1102.

In Rodriguez, the court vacated summary judgment in the defendant's favor because the parties disputed material facts: whether the plaintiff informed the defendant he feared his life was in danger and he needed protection or transfer. 508 F.3d at 619. In a declaration, the plaintiff averred he orally reported the threat to the defendant at least twice, and he submitted an inmate request form stating he needed protection. Id. at 618-19. The defendant, however, denied having had "security-related conversations" with the plaintiff and having knowledge of the plaintiff's grievance. Id. at 619. See also Caldwell, 748 F.3d at 1101 (finding a jury reasonably could infer the defendants had subjective knowledge of a risk of harm where the plaintiff expressed he feared his cellmate and the fear was "well-founded" because the cellmate set fire to the cell earlier in the day).

## ii. Plaintiff's Reports of a Threat of Harm

To overcome Defendants' assertion of qualified immunity, Plaintiff must demonstrate at least a genuine issue of material fact as to whether Defendants were deliberately indifferent to a known risk of serious harm. "Because § 1983 'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation,' each defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions." Id.

(quoting <u>Zatler</u>, 802 F.2d at 401). As such, the Court will analyze Plaintiff's allegations against each Defendant.

As to Defendant Jorge, Plaintiff tells the following narrative, which this Court must accept as true. On the morning of group, Defendant Jorge was present on the wing in his role as "administrative officer," whose duties were to "be the security and supervising staff for the counsellors, psychologists and psychiatrists." <u>See</u> Jorge Aff. at 2. Plaintiff's cell on the mental health wing was close to Henderson's cell. Pl. Response at 15. While in their cells, Henderson threatened Plaintiff and showed Plaintiff a weapon he planned to use to carry out his threat. <u>Id.</u> Out of fear, Plaintiff informed Defendant Jorge about Henderson's threat, whispering a warning to Jorge and holding up a sign saying Henderson had a weapon. <u>Id.</u> at 15, 16. Plaintiff reported the threat to Defendant Jorge believing Jorge knew about the first incident between him and Henderson. The first incident was described as "the talk of the mental health unit." Pl. Response at 23.

Plaintiff hoped Defendant Jorge would discover Henderson's weapon and confiscate it so inmate Henderson could not carry out his threat. <u>See</u> Pl. Interview Tr. at 5-6; Depo. Tr. at 8. After Plaintiff was placed in the group room, he observed Defendant Jorge pull Henderson from his cell. Defendant Jorge did not strip-search Henderson, <u>see</u> Pl. Response at 16, and fastened Henderson's

handcuffs loosely, allowing Henderson to easily slide his hands out, id. at 27. When Henderson entered the group room, Plaintiff saw Henderson pulling the weapon out of his pants. Plaintiff, seeing that Defendant Jorge was not going to prevent the attack, rushed Henderson, attempting to prevent Henderson from stabbing him. Pl. Interview Tr. at 5; Depo. Tr. at 6, 8.

As to Defendant Rouse, Plaintiff explains the following: Defendant Rouse escorted Plaintiff to the group room. See Pl. Response at 16. There, Plaintiff informed Defendant Rouse that Henderson had a weapon and would try to kill Plaintiff. Id. Defendant Rouse laughed and told Plaintiff no one had a knife. Id. Inmate Trimanye, in his affidavit, confirms Plaintiff reported a threat of harm to Defendant Rouse; Trimanye avers the mental health official who was present in the group room overheard Plaintiff inform Rouse that Henderson had a weapon. Id. at 24. Plaintiff also alleges Defendant Rouse was aware of the first incident between him and Henderson because Rouse served and investigated the disciplinary report against Henderson. Complaint at 6; Response at 23.[5]

---

[5] Defendant Rouse acknowledges his "primary function was to process and serve inmate disciplinary reports," though he does not recall "any previous disciplinary reports referencing both Henderson and [Plaintiff]." Rouse Aff. at 2. He also states in response to Plaintiff's interrogatories that he does not recall serving Henderson a disciplinary report following the first incident. Rouse Interr. Resp. ¶ 24. Defendants provide a copy of the incident report for the first incident (Doc. 118-11), but they do not

Accepting Plaintiff's allegations as true and construing all reasonable inferences in his favor, Plaintiff describes a classic Eighth Amendment violation. See Rodriguez, 508 F.3d at 619; Caldwell, 748 F.3d at 1102. Plaintiff alleges he warned Defendants Henderson had a weapon and planned to use the weapon to harm or kill him during group. Plaintiff also alleges Defendants knew about the first incident in which Henderson tried to attack Plaintiff. Plaintiff's allegations, if true, demonstrate Defendants "actually knew of a substantial risk that [Henderson] would seriously harm [Plaintiff]." See Caldwell, 748 F.3d at 1102.

The threat of harm Plaintiff reported to Defendants was not vague or conclusory but specific, providing the who, what, when, where, and how. See Rodriguez, 508 F.3d at 619; Caldwell, 748 F.3d at 1102. See also Sears v. Roberts, 922 F.3d 1199, 1208 (11th Cir. 2019) (concluding the plaintiff's allegations were not conclusory, but described "specific, discrete facts of the who, what, when, and where variety") (quoting Feliciano v. City of Miami Bch., 707 F.3d 1244, 1253 (11th Cir. 2013)).

Plaintiff told Defendants of a "well-founded," particularized fear. He reported another inmate threatened his life (the "what"), identified the source of the threat (the "who"), stated the threat would occur in the group room that morning (the "where" and

provide a copy of the disciplinary report. Accordingly, whether Defendant Rouse knew of the first incident is a factual dispute.

"when"), and identified the weapon that would be used (the "how").
As such, this case is factually inapposite from the sole persuasive
authority on which Defendants rely. See <u>Anderson v. Darden</u>, No.
5:07-cv-208 (CAR), 2008 WL 4376824 (M.D. Ga. Sept. 25, 2008)
(granting summary judgment because the plaintiff instigated the
fight, there was no record of trouble between the two inmates, and
the plaintiff reported only a vague fear, saying he was afraid he
would be "jumped" by unnamed inmates).

Defendants ask the Court to discount the affidavits Plaintiff
offers, saying they constitute inadmissible hearsay. See Motion at
14. Defendants' unexplained conclusion that the affidavits
constitute inadmissible hearsay is unpersuasive. A party opposing
summary judgment may rely upon affidavits or sworn pleadings if
made on personal knowledge and based on facts that may be reduced
to admissible evidence for trial. Fed. R. Civ. P. 56(c)(1), (4).
Defendants do not dispute the facts contained in Plaintiff's
affidavits and the inmate-witness affidavits are based on personal
knowledge or can be reduced to admissible form for trial. See
Motion at 14. As such, Plaintiff's affidavits and those of his
inmate-witnesses constitute evidence for purposes of opposing
summary judgment, and the Court must consider them.

Defendants also ask the Court to accept as a fact that
Plaintiff "instigated" the fight with Henderson and therefore
caused his own injury. See Motion at 15. They contend Plaintiff's

evidence does not support his "claims, given that Plaintiff has admitted to charging Inmate Henderson and initiating the fight." Id. at 14. They also rely on the Inspector General's report, in which the inspector noted the State Attorney's Office labeled Plaintiff the "instigator" of the fight. Id. at 13.

Significantly, Plaintiff denies having instigated the stabbing incident. See Response at 53-55; Depo. Tr. at 9. He does concede he rushed at Henderson, but he also explains did so because he believed Defendants were not going to protect him even though he told them Henderson was planning to bring a weapon to group. See Depo. Tr. at 6. Plaintiff testified he charged at Henderson "out of protection." Id. at 8. See also Pl. Interview Tr. at 4, 5.

Moreover, the Court is not obliged to accept as a fact the State Attorney's Office's conclusion, based on the inspector's report, that Plaintiff was the "instigator" of the altercation. The purpose of the Inspector General's investigation was to determine whether Henderson committed a crime, not to resolve whether Plaintiff's constitutional rights were violated. See IG Report at 9. And in his written report, upon which the State Attorney's Office based its conclusion, the inspector omitted reference to Plaintiff's explanation for rushing at Henderson and that Plaintiff warned Defendants before the stabbing incident of Henderson's threat. See IG Report at 12, 17-18; Pl. Interview Tr. at 5-6. In ruling Defendants' Motion, this Court must accept

Plaintiff's allegations as true, and Plaintiff avers he rushed Henderson because he knew Henderson had a weapon, he watched Defendant Jorge pull Henderson from his cell without conducting a strip-search, and Henderson pulled the weapon from his waistband as he entered the group room. These facts are material to Plaintiff's Eighth Amendment claim, and the Court may not overlook them.

While Plaintiff admits he rushed Henderson, the evidence, considered in totality and viewed in the light most favorable to Plaintiff, does not demonstrate as a matter of law that Plaintiff was the "instigator" or that he caused his own injury. On the contrary, a reasonable jury could conclude instead that Henderson, not Plaintiff, "instigated" the fight when, before group, he brandished the weapon and threatened Plaintiff with it, and when Henderson appeared intent on following through on that threat by pulling the weapon from his waistband as he entered the group room.

A reasonable jury also could conclude Defendant Jorge did not search Henderson and loosened Henderson's cuffs knowing Henderson planned to attack Plaintiff. As Plaintiff explains in his second affidavit, "If Defendant Jorge would have searched Inmate Henderson as he [claims to have done] then it would have been impossible for Inmate Henderson to exit his cell possessing a knife unless [D]efendant Jorge knowingly and willingly permitted

Henderson to exit his cell possessing a knife." Pl. Response at
52.

To the extent Defendants suggest the Court should accept their
testimonies as more credible than Plaintiff's allegations, it is
not the province of this Court to make credibility determinations
on a motion for summary judgment. See Furcron v. Mail Centers Plus,
LLC, 843 F.3d 1295, 1304 (11th Cir. 2016) ("[T]he Court may not
weigh conflicting evidence or make credibility determinations of
its own.") (internal quotation marks omitted); Hall v. Bennett,
447 F. App'x 921, 924 (11th Cir. 2011) (reversing the district
court's grant of summary judgment because the court improperly
"weighed the witnesses' credibility by favoring" the officer's
account over the prisoner-plaintiff's).

Plaintiff satisfies his burden on qualified immunity. He
alleges facts that, if true, demonstrate an Eighth Amendment
violation, and the nature of the violation was clearly established
at the time of the stabbing incident. See, e.g., Caldwell, 748
F.3d at 1102 ("[T]his Court already clarified that a prison guard
violates a prisoner's Eighth Amendment right when that guard
actually (objectively and subjectively) knows that one prisoner
poses a substantial risk of serious harm to another, yet fails to
take any action to investigate, mitigate, or monitor that
substantial risk of serious harm."). Accordingly, Defendants are
not entitled to qualified immunity on summary judgment.

## C. Damages Available Under 42 U.S.C. § 1997e(e)

The Prison Litigation Reform Act (PLRA) requires a plaintiff seeking damages to demonstrate the alleged constitutional violation caused a physical injury. 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.").

The PLRA does not define "physical injury." The Eleventh Circuit has explained a physical injury is one that is not simply de minimis, though it "need not be significant." Dixon v. Toole, 225 F. App'x 797, 799 (11th Cir. 2007) (per curiam) (citing Harris v. Garner, 190 F.3d 1279, 1286 (11th Cir. 1999)). Bruising and scrapes fall into the category of de minimis injuries. Id. Accord Mann v. McNeil, 360 F. App'x 31, 32 (11th Cir. 2010) (holding vague back injuries and scrapes amounted to de minimis injuries).

It is difficult to fathom describing any stabbing as a de minimis injury, even if the victim is lucky enough to have survived. Here, Plaintiff sustained more than a vague injury or a minor scrape. Henderson stabbed Plaintiff with a "rod" estimated to be 7.8 cm in length. See Med. Records at 1. As shown in the picture Defendants provide, the rod punctured Plaintiff's skin and was embedded in his neck/shoulder area. See Incident Report at 2. Plaintiff avers the rod was embedded in his neck for three hours

before it was removed. See Response at 52. Prior to removing the rod from his neck, the prison doctor ordered x-rays to ensure it had not caused internal damage. See Med. Records at 1, 3.

Under Defendants' own proffered definition of a "physical injury," Plaintiff's injury is more than de minimis. According to Defendants, "[a] physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc." Motion at 18 (quoting Luong v. Hatt, 979 F. Supp. 481, 486 (N.D. Tex. 1997)). Plaintiff received immediate medical attention after being stabbed. See Med. Records at 4-5. He suffered more than a sore muscle, a bruise, or a scratch. Moreover, Plaintiff submitted multiple sick-call requests seeking additional treatment in the months following the injury. See Response at 41, 44, 45, 47, 48, 49, 50. Upon review of the evidence, the Court is not convinced that simply because the rod was successfully removed and the wound healed well, Plaintiff's injury constitutes a de minimis one.

As such, Defendants' motion is due to be denied to the extent they argue Plaintiff's request for compensatory and punitive damages is barred under the PLRA.

## VI. Appointment of Counsel

This Court has broad discretion in determining whether the appointment of counsel is appropriate. Under these circumstances

27

and at this point in the proceedings, the Court finds Plaintiff is entitled to the assistance of a trained practitioner. Defendants are represented by counsel and demand a jury trial, and there are sufficiently complex factual and constitutional issues involved in this litigation. Plaintiff will require assistance of counsel at a settlement conference and, if the case does not settle, at pretrial conference and trial. Therefore, the Court will refer this case to the Jacksonville Division Civil Pro Bono Appointment Program.

Accordingly, it is

**ORDERED:**

1. Defendants' Motion for Summary Judgment (Doc. 102) is **GRANTED in part** and **DENIED in part.** The Motion is **GRANTED** to the extent Defendants are entitled to Eleventh Amendment immunity as to any requests for damages against them in their official capacities. In all other respects, the Motion is **DENIED.**

2. This case is **referred** to the Jacksonville Division Civil Pro Bono Appointment Program so the designated deputy clerk of the Court may seek counsel to represent Plaintiff.

**DONE AND ORDERED** at Jacksonville, Florida, this 15th day of August, 2019.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Johnny Burgess
Counsel of Record